**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JCM INSURANCE SERVICES, INC., *et al.*, | ) CASE NO. 1:23-cv-1801 ) |
| Plaintiffs, | ) JUDGE DAVID A. RUIZ ) ) |
| v. | ) ) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, *et al.*, | ) **MEMORANDUM OPINION AND ORDER** ) ) |
| Defendants. | ) |

On August 11, 2023, Plaintiffs JCM Insurance Services (JCM) and James Moyer filed a Complaint against Government Employees Insurance Company (GEICO) and other defendants in the Cuyahoga County Court of Common Pleas, Case No. CV-23-983829. (R. 1-1, PageID# 13-22). On September 15, 2023, Defendant GEICO removed this action to the Northern District of Ohio with the express consent of the other named Defendant, Geico Insurance Agency, LLC ("GIA"). (R. 1-5, PageID# 20, ¶6).

On October 13, 2023, Plaintiffs filed their First Amended Complaint, which reasserted the same three causes of action as in their original complaint: (1) declaratory relief that Plaintiffs are "entitled to payments or renewal or service commissions based on renewals" under a 2020 GEICO Field Representative (2020 GFR) agreement; (2) breach of contract, namely the 2020 GFR agreement; and (3) unjust enrichment. (R. 8).

Defendants have moved to dismiss the First Amended Complaint for failure to state a

claim. (R. 11). Plaintiffs filed an opposition (R. 13), to which Defendants filed a reply. (R. 14).

## I. Factual Allegations[1]

Plaintiff JCM is an Ohio corporation and Plaintiff Moyer is the sole owner of JCM. (R. 8, PageID# 377, ¶¶1-2).

It is alleged that in 2007, Defendants "first contracted with Plaintiffs to sell insurance" on Defendants' behalf. *Id*. at ¶7. In 2012, Defendants and JCM entered into a contract titled a GEICO Field Representative (2012 GFR) agreement, which Moyer signed on or around January 15, 2012. *Id*. at ¶8. It is alleged that Section 10 of the 2012 GFR agreement contained termination provisions, including the statement that "GFR shall not be entitled to any payments or renewal or service commissions based on renewals occurring subsequent to the termination date of this Agreement." (R. 8 at ¶9; *see also* R. 1-1, PageID# 35).

It is also alleged that in December of 2020, the Defendants sent Plaintiffs a revised GFR agreement (2020 GFR), that Defendants required Plaintiffs to sign the Agreement, that Defendants did not allow Plaintiffs to negotiate any of the terms of the 2020 GFR agreement, and that on or about December 3, 2020, Moyer signed the 2020 GFR agreement. *Id*. at ¶¶9-11.

Plaintiffs maintain that the 2020 GFR agreement made a number of changes to the previous arrangements between the parties, namely that the 2020 GFR removed the provision providing that Plaintiff would not be entitled to any payments or renewal or service commissions based on renewals occurring subsequent to the termination date of the Agreement. (R. 8, PageID# 379, ¶12). Plaintiffs allege that "[w]hile the GFR Agreements provide that Plaintiffs are

---

[1] When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff.

required to provide services to the Defendants' customers, the Defendants have mandated that Plaintiffs provides services beyond what was contemplated by the GFR Agreements without providing additional compensation." *Id*. at ¶18. The Amended Complaint alleges as follows:

> 20. During the COVID-19 pandemic, the Defendants had difficulty handling all of the corporate calls in a timely manner. Yet, instead of hiring enough corporate employees to handle calls, the Defendants offered additional contracts to the GFRs, including Plaintiffs, wherein the GFR agreed to take these additional services calls in exchange for additional compensation above the normal commission-based compensation.
>
> 21. Plaintiffs declined to sign this additional contract. However, despite declining to take on the additional service-call volume, the number of service calls Mr. Moyer and his office received for corporate customers and other agents' customers greatly increased.
>
> 22. Despite these additional calls being outside the 2020 GFR Agreement (as evidenced by the subsequent agreements with the GFRs), the Defendants did not compensate Plaintiffs when Mr. Moyer or his staff provided services for these additional calls. By way of example only, when a customer was routed to Mr. Moyer to add a vehicle to his insurance policy, Mr. Moyer was required to assist that customer. Unless that customer was Mr. Moyer's, he did not receive a commission or any other form of compensation for adding the vehicle to the policy.

(R. 8, ¶¶20-21).

According to Plaintiffs, "Defendants also rerouted potential customers of Plaintiffs to GEICO corporate officers or a GEICO affiliate" and, in the process, deprived Plaintiff of commissions. (R. 8, PageID# 381, ¶23). Plaintiffs point to Defendants' requirement that "certain new customers of Plaintiffs ... submit paper applications as an additional step in the approval process," a procedure that effectively "prevented Plaintiffs from selling insurance to those customers." *Id*. at ¶24. "In some instances when the Defendants required paper applications, they directed the applicant to another insurance company with which they had contracted," resulting in Defendants receiving compensation for the sale, but Plaintiffs being left without a commission

3

despite generating the business. *Id*. at ¶25. It is further alleged that "Defendants routed potential customers *who attempted to contact Plaintiffs* to GEICO corporate employees. When those potential customers purchased GEICO insurance products, Plaintiffs did not receive a commission and/or credit for these new customers." *Id*. at ¶26 (emphasis added).

Defendants allegedly changed their procedures again around July 2022, resulting in Plaintiffs no longer being permitted to perform service for any GEICO customer, including those customers who previously purchased insurance through Plaintiffs. *Id*. at ¶27. Defendants allegedly transferred the calls of all customers seeking service assistance automatically to GEICO's corporate call center, thereby depriving Plaintiffs of commissions on any additional insurance coverage that would be added by the customer, even if Plaintiffs sold the original policy to the customer. *Id*.

On March 21, 2023, Defendant GEICO terminated Plaintiffs' GFR Agreement (effective April 20, 2023) ostensibly in retaliation for Plaintiff Moyer filing a class-action lawsuit in federal court seeking benefits under ERISA. (R. 8, PageID# 382, ¶28). Since that time, Defendants have stopped paying all commissions to Plaintiffs even for renewals of Plaintiffs' customer policies. *Id*. at ¶29.

Finally, it is alleged that while Defendants have not paid Plaintiffs commissions on renewal contracts, Defendants continue to issue renewal contracts under Plaintiff JCM's name. *Id*. at ¶30.

## II. Standard of Review

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff. *See Erickson v.*

4

*Pardus*, 551 U.S. 89, 93–94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

### III. Analysis

**A. Count Two: Breach of Contract**

Defendants' motion to dismiss argues that Plaintiffs' breach of contract claim in Count Two fails under Maryland law, as a matter of law, because the contract does not impose the obligation that Plaintiffs claim Defendants breached. (R. 11-1, PageID# 409).[2]

---

[2] The Amended Complaint acknowledges that the 2020 GFR agreement is governed by

5

Specifically, it is asserted that Plaintiffs' claim—that Defendants breached the 2020 GFR agreement by failing to pay compensation for renewals that occurred after termination of the agreement—is barred by the clear and unambiguous terms of the agreement itself. Defendants deny that said agreement imposes any such obligation. *Id*.

> Under Maryland law, the interpretation of a contract, including the question of whether the language of a contract is ambiguous, is a question of law subject to *de novo* review. *See Towson v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004). We have long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation. *Id*. at 78, 862 A.2d at 946–47. Under the objective theory:
>
>> "A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."
>
> *Dennis v. Fire & Police Employees Ret. Sys.*, 390 Md. 639, 656–57, 890 A.2d 737, 747 (2006) (quoting *General Motors Acceptance v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985) (internal quotations omitted)).

*Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (Md. 2006).[3]

Plaintiffs assert they entered into a contract with Defendants GEICO and GIA to sell insurance on their behalf and entered into a 2012 GFR agreement, which stated that

---

Maryland law. (R. 8, PageID# 379, ¶17).
[3] Ohio laws of contact construction are not materially different, as Ohio courts interpret contracts "with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument." *Hope Acad. Broadway Campus v. White Hat Mgt., L.L.C.*, 2015-Ohio-3716, ¶ 35, 145 Ohio St. 3d 29, 39, 46 N.E.3d 665, 674 (Ohio 2005) (citations omitted); Ohio courts hold that the "intent of the parties is presumed to reside in the language they chose to use in their agreement." *Id*. (citing *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (Ohio 1996)).

6

GEICO's field representative (GFR) "shall not be entitled to any payments or renewal or service commissions based on renewals occurring subsequent to the termination date of this Agreement." (R. 13, PageID# 429, *citing* R. 8 at ¶9). Plaintiffs assert that the current agreement subject of the breach of contract claim—-the 2020 GFR agreement—conspicuously removed this provision. *Id*. Plaintiffs contend that "[t]his silence [in the 2020 GFR agreement] is in contrast to the 2012 GFR Agreement, which explicitly ended renewal commissions with the termination of the Agreement" and is indicative of the 2020 GFR *not* cutting off commissions upon termination. *Id*. at PageID# 434.

Defendants' motion and reply brief does not challenge the assertion that the above referenced provision from the 2012 GFR agreement was excised from the 2020 GFR agreement. Instead, Defendants contend that the following provision of the 2020 GFR agreement precludes Plaintiffs' interpretation:

> Upon termination of this Agreement, **GEICO shall withhold GFR's final commission check for a period of six (6) months** following the termination effective date. The amount of the **final** commission check is subject to adjustment during that time based upon cancellations or Additions or Deletions of Coverage. . . . The amount of the **final** commission check is also subject to an offset by GEICO of any amounts owed to GEICO by GFR, as reasonably determined by GEICO.

(R. 14, PageID# 446, *citing* R. 1-1 at PageID# 76, Exh. 2, 2020 GFR agreement at § IV(C) (emphasis added by Defendants). It is Defendants' interpretation that the "final commission check" language precludes the interpretation that "commissions may not cease 'at all,' even after the GFR receives his '**final** commission check.'" (R. 14, PageID# 446). This provision, Defendants argue, is unambiguous. *Id*.

The Court disagrees. At this early stage of the litigation, it is not the Court's function to adopt either parties' interpretation of the agreement. As indicated above, the

7

true test of what the terms of a contract mean is not necessarily what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Based solely on identified language contained in the four corners of the 2020 GFR agreement contract, the Court finds the agreement is ambiguous. Plaintiff's interpretation of the 2020 GFR agreement is certainly a *plausible and reasonable* reading of the contract to the extent it alleges that the agreement allows for some recovery of renewal commissions even after termination. The provision of the agreement cited by Defendants specifically states that "[t]he amount of the final commission check is *subject to adjustment during that time based upon cancellations or Additions or Deletions of Coverage*." (R. 1-1, PageID# 76) (emphasis added). In addition, the contract defines "Addition or Deletion of Coverage" as "[a]ny policy change that results in an adjustment of the policy premium. Such change, if commissionable, will result in a pro-rata increase or decrease of GFR's commission at the existing commission rate." (R. 1-1, PageID# 79). It would not be unreasonable to interpret these provisions as contemplating additional commissions where additional coverage is added or, conversely, reductions in commissions where coverage is cancelled. In other words, the contract language does *not* foreclose a construction that renewal commissions were potentially contemplated for those renewals accruing during the six-month period after termination.[4]

---

[4] By making this finding, the Court does not definitively decide that renewal commissions are, in fact, recoverable post-termination. Rather, as Defendants' argument in favor of dismissal focused primarily on § IV(C) of the agreement, the Court merely finds that said provision does not clearly foreclose Plaintiffs' reasonable interpretation to the contrary. To the extent it is Plaintiffs' position that the 2020 GFR agreement provides for or allows for renewal commissions to continue without end, the Court is highly skeptical that such an interpretation is reconcilable with the language of § IV(C). Nevertheless, the Court need not decide this issue at this time, and only decides that dismissal is inappropriate at this stage of the proceedings as Plaintiff has stated a

This Court's decision is consistent with the Southern District of Mississippi's recent decision construing a nearly identical provision in a similar factual context. *See Sims Agency LLC v. GEICO*, No. No.: 3:22-CV-00002, 2023 WL 2481476 (S.D. Miss. Mar. 12, 2023). That Court found the "final commission check" provision did not answer "when commissions cease" or whether "GEICO [is] required to pay renewal commissions for each of the six (6) months after termination[.]" *Id*. at *8. This Court agrees that "GEICO's interpretation of the language is not unequivocal and certainly lacks clarity." *Id*.

The Court declines to dismiss a breach of contract claim that is based on Defendants' own interpretation of the relevant provisions, an interpretation that is not compelled by the plain language of the contract. Plaintiffs have alleged that Defendants breached the 2020 GFR agreement, while alleging they have performed their duties under the contract. "Generally, nothing more is required at this stage of the litigation." *MRI Software, LLC v. Pacific Capital Management, Inc.*, 2016 WL 1436067 at *2 (N.D. Ohio, Apr. 11, 2016) (Nugent, J.).

Therefore, Defendants' motion to dismiss the breach of contract claim (R. 11) is hereby DENIED.

C.    **Count Three: Unjust Enrichment**

Defendants assert that Plaintiffs' unjust enrichment claim must be dismissed because a binding agreement controls the parties' relationship. (R. 11-1, PageID# 413, citing *Padula v. Wagner*, 37 N.E.3d 799, 813 (Ohio Ct App. 2015) (observing that it is

---

plausible claim for breach of contract.

"well-established Ohio law that the equitable theory of unjust enrichment is not available when the parties' relationship is governed by an express contract.")[5] Because Plaintiffs' complaint specifically alleges the existence of an agreement that ostensibly covers the same subject, Defendants argue that the unjust enrichment claim must be dismissed. *Id*.

Plaintiff points out that it is entitled to plead in the alternative under Federal Rule of Civil Procedure 8(d)(2). (R. 13, PageID# 432-434). Indeed, Rule 8(d)(2) states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Furthermore, Rule 8(d)(3) specifically states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Defendants' reply asserts that alternative pleading to a breach of contract claim is only permitted where there is evidence of fraud, bad faith, or illegality, and that Plaintiffs have not pled any such facts. (R. 14, PageID# 442).

As this Court previously noted in a matter addressing a similar argument:

> The Court agrees with numerous other decisions from this district that allows alternative pleading for breach of contract and under equitable theories. *See, e.g., Minster MinMun02, LLC v. Vill. of Minster, Ohio*, No. 3:20 CV 1784, 2021 WL 4593088, at *2 (N.D. Ohio Jan. 7, 2021) (denying Rule 12 motion to dismiss promissory estoppel claim noting that plaintiff "may plead promissory estoppel as an alternative to the breach-of-contract claim"); *Krawczyszyn v. Columbian Life Ins. Co.*, No. 1:21 CV 85, 2021 WL 2722514, at *4 (N.D. Ohio June 30, 2021) (recognizing that "a plaintiff may not collect under both a breach of contract and a promissory estoppel" but denying a motion to dismiss because "at the motion to dismiss stage" alternative pleading is permitted); *Salling v. Budget Rent-A-Car Sys.*, No. 1:09-CV-2160, 2010 WL 11565528, at *3 (N.D. Ohio Feb. 19, 2010)

---

[5] The Court is aware of other cases discussing Ohio law that hold "a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020); *see also Lehmkuhl v. ECR Corp.*, 2008 WL 5104747, at *5 (Ohio Ct. App. Dec. 2, 2008) ("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject").

>  (rejecting defendant's argument that … pleading an unjust enrichment claim in the alternative is only appropriate when uncertainty exists as to the validity of the underlying contract, and denying motion to dismiss); *King v. Hertz Corp.*, No. 1:09 CV 2674, 2011 WL 1297266, at *8 (N.D. Ohio Mar. 31, 2011) (acknowledging that the "existence of an express, valid contract bars an injured party's unjust enrichment claim" but finding that this general ruled does "does not prevent a plaintiff, within his complaint, from pleading both theories of recovery (breach of contract and unjust enrichment)"); *cf. Ragen v. Hancor, Inc.*, 2010 WL 301761, at *4 (N.D. Ohio Jan. 19, 2010) (denying a motion to dismiss a tortious interference claim despite its inconsistency with the plaintiff's alternative theory that a contract existed between the parties).

*Med. Mut. of Ohio v. AXA Assistance USA, Inc.*, No. 1:22-CV-1313, 2023 WL 6314579, at *11 (N.D. Ohio Sept. 28, 2023).

Furthermore, the Court disagrees that the Amended Complaint has not alleged facts that could rise to bad faith. Reading the Amended Complaint as a whole, it is certainly alleged that Defendants changed their procedures on multiple occasions to include steps that would effectively deprive Plaintiffs from receiving commissions. (*See, e.g.*, R. 8, ¶¶23-27).

Therefore, Defendants' motion to dismiss the unjust enrichment claim in Count Three is DENIED.

**D. Count One: Declaratory Judgment**

Defendants' motion to dismiss the complaint asserts that Plaintiffs' claim for declaratory relief in Count One "fails for the same reasons that the unjust enrichment and breach of contract claims fail." (R. 11-1, PageID# 417). Defendants contend that a claim for declaratory relief fails as a matter of law if the underlying violations also fail as a matter of law. *Id*., citing *Mitchell v. Ohio State Univ.*, No. 2:19-CV-4162, 2020 WL 5250459, at *11 (S.D. Ohio Sept. 3, 2020).

Because Defendants' motion to dismiss Count One is predicated on the assumed

11

success of their challenges to the Counts Two and Three, which the Court has denied as explained above, the motion to dismiss Count One is DENIED.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (R. 11) the Amended Complaint is DENIED. Defendants must file an Answer to the Amended Complaint within fourteen (14) days of this Order.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 23, 2024